IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SENNAYI TEOUME-LESSANE,**

    **Petitioner,**

v.                    **CIVIL ACTION NO. 5:07cv159**
                                      **(Judge Stamp)**

**JEFF BOLYARD,**

    **Respondent.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

On December 5, 2007, the *pro se* petitioner, Sennayi Teoume-Lessane, an inmate at FCI Gilmer which is located in Glenville, West Virginia, filed an Application for Habeas Corpus pursuant to 28 U.S.C. §2241 seeking, among other things, restoration of twenty-seven days good time credit that he lost through a disciplinary hearing. The petitioner paid the required filing fee on December 27, 2008. By Order entered on December 28, 2007, the Court directed the respondent to show cause why the petitioner should not be granted. On January 28, 2008, the respondent filed a Motion to Dismiss or in the alternative Motion for Summary Judgment. On January 30, 2008, the Court issued a Roseboro Notice, and on February 27, 2008, the respondent filed a response. This matter is pending before me for an initial review and Report and Recommendation pursuant to LR PL P 83.09.

### II. FACTS

The petitioner is serving a six year sentence imposed by the Superior Court of the District

1

of Columbia. The sentence was imposed on June 30, 2004 following his conviction for violating D.C. Code § 22-4108, 1st Degree Child Sex Abuse. The petitioner's projected release date is September 24, 2009 via good conduct time release. (Doc. 13-4, p. 1).

On May 18, 2006,[1] an incident report was prepared by D. Bissett ("Bissett"), a correctional counselor, charging the petitioner with a violation of Prohibited Act Code 203,[2] Threatening Another with Bodily Harm. (Doc. 13-5, pg. 1). The report indicated that on May 18, 2006. Bissett opened the door to her office, and the petitioner:

> [P]hysically rushed inside the doorway... Teoume-Lessani did not stop until he was close enough he could have kissed me. I ordered inmate Teoume-Lessane to step back because he was too close to me. I had warned inmate Teoume-Lessane on a previous occasion to stop winking at me. I felt personally threatened by this advance and was in fear of inmate Teoume-Lessane's intentions.

(Doc. 13-5, p.1). A copy of the incident report was delivered to the petitioner on May 18, 2006, at 10:15 a.m. (Id).

The investigating officer, Sgt. Harrell ("Harrell"), interviewed the petitioner regarding the incident and noted that the petitioner acknowledged going to Bissett's door because he believed she

---

[1] At the time of the incident, the petitioner was incarcerated at Rivers Correctional Institution ("RCI") which is located in Winton, North Carolina. However, at the time he filed his petition, he was incarcerated at FCC Gilmer, which is located in Glenville, West Virginia which is within the venue of this Court. Jurisdiction over a §2241 petition is determined at the time of filing of the petition. Hooker v. Sivley, 187 F. 3d 680, 682 (5th Cir. 1999). Therefore, because the petitioner was incarcerated at FCI Gilmer when he filed his petition, this Court had jurisdiction and continues to have jurisdiction even though the petitioner was transferred to a Federal Correction Center in Petersburg, Virginia after he filed his petition

[2] 28 C.F.R. § 541.13 contains a list of prohibited acts and disciplinary scale. Table 3 of that section sets forth Prohibited Act 203: "Threatening another with bodily harm or any other offense.", which falls within the second category of offenses which are considered of high severity.

had called him back. Harrell also noted that the petitioner's attitude was good. After talking with Bissett, Harrell confirmed the charge and referred the matter to the United Disciplinary Committee ("UDC"). (Doc. 13-5, p.2). Given the severity of the charges, the UDC referred to matter to the Disciplinary Hearing Officer ("DHO") with a recommendation that the petitioner receive sixty days Disciplinary Segregation. (Doc. 13-5, p. 1).

The DHO hearing was held on May 31, 2006. The DHO found that the petitioner had committed the Prohibited Act Code 203, Threatening Another with Bodily Harm Or Any Other Offense. In reaching her decision, the DHO considered the Incident Report and the petitioner's statements at the DHO hearing and the six page written document he submitted on May 29, 2006. The DHO sanctioned the petitioner to 30 days of Disciplinary Segregation, loss of phone and commissary privileges for 30 days, concurrent with the Disciplinary Segregation, disallowed 27 days of Good Conduct Time, and a change in quarters The DHO report was delivered to the petitioner on June 7, 2006. (Doc. 13-8, pp. 1-6).

The petitioner then appealed to the appropriate Regional Office and Office of General Counsel, where a final decision denying the appeal was entered on December 13, 2006. (Doc. 1-3, p. 30 ). Thereafter, the petitioner filed the instant §2241 petition.

### III. CONTENTIONS OF THE PARTIES

The petitioner raises the following grounds in his Application for Habeas Corpus:

(1) The Incident Report was the filing of a false disciplinary charge;

(2) Denial of a staff representative during the pendency of the disciplinary hearing deprived the petitioner of due process of law and violated a protected liberty interest;

(3) Denial of the right to present documentary evidence during the disciplinary hearing process deprived the petitioner of due process of law and violated a protected liberty interest;

(4) Denial of the right to call any witnesses during the pendency of the disciplinary hearing process deprived the petitioner of due process of law and violated a protected liberty interest; and

(5) There was no evidence presented to substantiate the finding of guilt, and the DHO's decision was biased, arbitrary, and capricious.

The respondent argues that the petition should be dismissed because:

(1) Cuevas was provided all of the Due Process Rights required by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539 (1974) regarding the disciplinary hearing; and

(2) The evidence relied upon by the DHO was sufficient for a finding of guilt.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957).

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings,

4

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. ANALYSIS

### A. Due Process

The Due Process Clauses of the Fifth and Fourteenth Amendments provide that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. V and XIV, §1. A liberty interest is involved in the instant case as the petitioner was denied good time credit. See Young v. Kann, 926 F.2d 1396, 1399 (3rd Cir. 1991 (a federal prisoner "has a

constitutionally protected liberty interest in good time credit").

In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court addressed the due process that must be provided during a prison disciplinary proceeding. According to the Supreme Court, due process requires as follows:

(1) giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

(2) providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

(3) allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

(4) permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

(5) providing impartial fact finders.

Id. at 564-571. The information before the Court reveals that Cuevas was provided due process as contemplated by Wolff.

First, the petitioner received written notice of the charges at least 24 hours in advance of the DHO hearing. More particularly, the petitioner received a copy of the incident report on May 18, 2006, and the DHO hearing was on May 31, 2006.

Second, the petitioner was provided a written statement by the DHO as to the evidence relied

on and the reasons for the disciplinary action. The DHO report, dated June 6, 2006, notes that the specific evidence relied upon to support a finding that the petitioner was: (1) the incident report written by Bissett, (2) the petitioner's statements at the DHO hearing and (3) the six page written document the petitioner submitted. In addition, the report explains the reason for the disciplinary action. More specifically, the report states that

> "[t]he action/behavior on the part of any inmate to threaten another with bodily harm, and direct that threat towards a staff member, poses a significant threat to the health, safety and welfare of that staff member. This type of behavior is not only disrespectful, it makes it more difficult for the staff member, who was the object of the threat, to complete their duties and adds an element of unnecessary stress which is detrimental to their emotional and mental well being. Furthermore, there is evidence that in the past inmate threats toward staff have been followed by inmate assaults on staff which have resulted in injury, including serious injury or death. It cannot, and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all time..

(Doc. 13-8, p. 5)

Third, the petitioner was advised of his right to call witnesses and present documentary evidence. Although the petitioner alleges he was denied the right to call witnesses and present documentary evidence, a review of the record establishes otherwise. The petitioner alleges that he met with the DHO on May 26, 2006, and verbally informed her of the documentary evidence he desired and the specific reasons why the evidence was material to his defense. However, beyond the petitioner's bald assertion, there is no evidence of record to suggest that such a meeting took place.³ On May 29, 2006, the petitioner did prepare a written statement which included a list of the

---

³The DHO notes in her Declaration that: "I understand that inmate Teoume-Lessane claims that, on May 26, 2006, he verbally informed me of the documentary evidence he desired and the specific reasons the documents were relevant to his defense. Inmate Teoume-Lessane only advised me on May 26, 2006 that he planned to request documents but he never identified them nor did he explain their relevance. The only time I received his request was the day of

7

evidence he requested be supplied to him: (1) the paperwork generated at the intake process for administrative detention on May 18, 2006; (2) Bissett's sign in sheet for inmates on May 18, 2006; (3) The Unit A call-out sheet for May 18, 2006; (4) copies of BOP PS 5270.07 which pertains to Inmate Discipline and Special Housing Unit; (5) the full text of 28 C.F.R. § 541 with any updated revisions; and (6) BOP PS 5500.07. As noted by the DHO, although the petitioner requested an extensive number of documents, he failed to clearly show how these documents were related to his defense. Furthermore, the petitioner was provided a copy of the incident report on May 18, 2006 five days before the UDC hearing and thirteen days before the DHO hearing. Such early notice afforded him ample time to gather and present evidence relevant to his defense. Instead, the petitioner waited until two days before the hearing to submit a list of the evidence he wanted to present. Therefore, he was not denied the right to present evidence, he simply chose not to submit his request in a timely manner and did not clarify the relevance of the evidence he sought.

Fourth, the petitioner was not denied the right to a staff representative. On May 26, 2006, the petitioner requested that Warden Snyder or an Assistant Warden be his representative. However, the petition was advised that those individuals could not serve as representatives at a Disciplinary Hearing.[4] The petitioner then submitted the names of two other staff members that he requested serves as his representative. One of those individuals, John White, would not agree to serve because of a duty conflict. (Doc. 13-11, p. 1). The other individual, Lt. Schwab was on leave at the time and unavailable to serve as the petitioner's representative. (Doc. 13-3, p. 2). Therefore, the warden

---

May 31, 2006, as I conducted the disciplinary hearing *in absentia*. Even upon receipt of the written request, however, the inmate did not explain the relevance of the documents. (Doc. 13-3, pp. 2-3).

[4] See 28 C.F.R. § 541.17(b).

appointed J. Horton ("Horton"), Education Director, to represent the petitioner. (Doc. 13-8, p.1) They met on May 30, 2006, at which time Horton ascertained that the petitioner had received a copy of the charges, understood the charges, and had knowledge of the disciplinary procedures and his rights. At that time, Horton provided the petitioner with a copy of the GEO/RCI policy 10.001, Inmates Rules and Discipline and a copy of GEO/RCI policy 1200.06, Administrative Remedy Procedure. Although the petitioner initially raised no objection to Horton's appointment as his representative, approximately fifteen minutes into the DHO hearing, he "became angry and stated that he did not want [Horton] as his representative and that he wished to represent himself." (Doc. 13-9). After confirming that the petitioner indeed desired to represent himself, Horton was dismissed from the hearing. (Doc. 19-9). Therefore, the petitioner was not denied his right to staff representation but, instead, chose not to accept the representative appointed in compliance with set procedure.[5]

Finally, the petitioner was provided an impartial decision-maker. In accordance with BOP regulations, the DHO did not act as the reporting official, investigating officer, UDC member, or witness and did not play a role in referring the charges.[6] Furthermore, based upon the record before the Court, the undersigned finds that the DHO report does not reveal any bias and that there is no justification for finding the DHO was biased.

Not only was the petitioner provided all the due process rights required by Wolff, the findings made by the DHO are sufficient to support the finding that the petitioner violated Prohibited Act Code 203, Threatening Another With Bodily Harm Or Any Offense. The Supreme Court held

---

[5] See 28 C.F.R. § 541.17(b).

[6] See 28 C.F.R. § 541.16(b).

in Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985) that "[t]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." The Supreme Court further stated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Explaining the standard further, the Supreme Court provided, "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead due process in this context requires only that there be some evidence to support the findings made in the discipline hearing." Id. at 547.

The undersigned acknowledges that in the case at hand there was conflicting evidence. The petitioner claimed the Incident Report was based on retaliation for his having filed legitimate grievances. However, in reaching her decision, the DHO relied upon the Incident Report, the petitioner's statements at the DHO hearing, and the document provided by the petitioner. The DHO noted that the petitioner failed to directly address his actions as alleged by Bissett and presented no evidence to support his contention that Bissett issued the Incident Report in retaliation for his filing a grievance against her supervisors. Furthermore, the petitioner also alleges that the investigating officer, Harrell, attempted to "blackmail" him into dropping his grievance before he was given a copy of the Incident Report and before he was read his right to remain silent. However, the DHO noted noted in her findings that the petitioner's alleged statements to Harrell were not included in the investigative report and, therefore, did not affect her findings. Clearly, there was "some evidence" to support a guilty finding in this case, and the DHO's decision must therefore stand.

## V. RECOMMENDATION

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss (Doc. 13) be **GRANTED**, and the petitioner's §2241 petition be **DENIED and DISMISSED WITH PREJUDICE**.

Any party may file, within ten (10) days after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk of the Court is further directed to prove a copy to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the United States District Court for the Northern District of West Virginia.

DATED: May 20, 2008

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE